The next case for argument is 171601 ZUP v. Nash Manufacturing, Inc. Good morning, Your Honors. Matt Worzen for ZUP, LLC. I'd like to start, if I may, by highlighting very quickly the key facts that we believe requires a reversal of the grant of summary judgment below. And those facts are these, that what you have here is a defendant that is highly sophisticated in the field of invention. Nash Manufacturing, and the record evidence shows this, has been in the business for over 50 years. The evidence also shows that Nash has developed many products in this field of invention and has obtained patents on those inventions. And Nash approached ZUP, the plaintiff here, and acknowledged, and this is record evidence, acknowledged a long felt need, acknowledged on a telephone conference that there is a challenge within this industry of being able, the athletic and the non-athletic, to get up out of the water into a water skiing position. The parties talked about this with a hypothetical, Wally Weekender, a middle-aged man, perhaps just like myself, who wants to enjoy water sports with his kids. Are you saying that this case comes down to long felt need, that all the pieces were in the prior art otherwise? That is not our position, your honor. No. But you've got foot bindings and handles and toe hook and all this stuff is in the prior art, so what's the big deal about putting them all together? So the district court's analysis is, as we say in the brief, hindsight defined. What the district court and it expressly, in its analysis, essentially says that the inventor here, Glenn Duff, reviewed the prior art, found these three components, and just combined them. But of course, this court has many decisions, that that is, that's a faulty analysis. But they all relate to water boards. Correct. And so there are a limited number of things you can do with a water board for stability and enjoyment, and so he put them together. I'd like to train attention on page 270 of the appendix, where the examiner finds that one of the prior art had these three components that a user, a non-athletic user, or a user could simultaneously engage to get up out of the water. So for example, if we go to the district... I don't think that's disputed. I think there's several things here that aren't disputed. One is, I don't think you're disputing, as Judge Lurie pointed out, that all of the individual elements existed in the prior art. I didn't think that was an issue of dispute. I thought the issue of dispute was really whether or not there was an adequate motivation to combine those pieces of prior art. I would, and perhaps it's quibbling, but... So tell us what wasn't in the prior art. Well, the handles, for example. The side-by-side handles were not, and if you look, if the court looks at the Clark reference, and the 1939 stunt board that was excluded from evidence, that provided the handles. But there are no handles, and the district court makes a finding from earlier in the where there were no handles. And so the examiner made a finding that, well, the way this claim is drafted, Clark is invalidating of the duff pad. So the district court can't then use that as obviousness analysis and say, well, I get the handles with Clark. So, again, perhaps it's quibbling, but I think it underscores that there is a disputed issue, and certainly it's not the province of the district court judge to call shots on that. And if I can get back to long felt need, I mean, we have it in the record that this defendant has been in the industry for 50 years and approaches Zuck and says, you have a great idea here. It's a challenge in the industry to get full participation in this endeavor. Now, we don't stop there, and we don't- What does it mean, you said, to get full participation in this endeavor? Are you talking about combining individual elements, or are you talking about something else? I'm talking about, very simply, just the ability to get up out of the water when you water ski. It requires a lot of athleticism and strength. And so this invention is born out of the inventor here, Glenn Duff, wanted full participation in this fun activity with his church group, so that non-athletic kids, athletic kids, they could all fully participate. And so that's where this invention was born. And it's simultaneous engagement of the tow hook, the side-by-side handles, and the side-by-side foot bindings, which the examiner here, and again, 270 of the appendix made a finding that deserves deference, that none of the prior art had these three elements to be simultaneously engaged. To move on to the contributory infringement issue, the district court applied the Sony case, the copyright Sony case, to hold that there's a substantial non-infringing use here because, like the Sony case, a VCR could be used to record a non-copyrighted program. We believe strongly that the RICO case applies. This court's RICO case, which holds that a defendant cannot bundle infringing and non-infringing components, and in this case, the configuration of the VersaBoard, which is the accused device, in a manner with the tow hook, with the side-by-side handles, and with the side-by-side foot bindings, that is configured, that is a component that is infringing and that can be only used to infringe. And what we have in the record is a YouTube video which demonstrates direct infringement of Claim 9, the 681 path. And to distinguish Sony, I would give the following example. A user in Sony uses the device in the same way when he infringes or when he doesn't infringe. He plugs in the VCR and he hits the record button. We don't have that here. What we have is use of the patented device in a manner that infringes. And that's how we distinguish the Sony case. Unless the court has further questions, I'll reserve the rest of my time. Thank you. Thank you. Thank you. Mr. Cleveland. Thank you, Your Honors, and may it please the Court, good morning. My name is Joe Cleveland. I represent the Appley Nash Manufacturing. In my remarks this morning, I would like to focus on two key points. First, to explain how Claims 1 and 9 of the patent are obvious and how the mere presence of secondary factors or considerations are not. I think you mean were obvious. Yes, sir. Were obvious rather than are. We're not talking about now. Right. We're talking about would have been obvious to a person who stole the art. And second, I'd like to demonstrate how Zupp failed to prove Nash contributorily infringed the patent. This is a textbook obviousness case. I thought it was undisputed that all the limitations of the 681 patent were there. Your friend says that the handles weren't in the prior art, so is that a disputed issue of fact? I don't believe so, Your Honor, because it's in the Fleischman patent and it's in the Stewart patent. The Fleischman patent has two side-by-side handles on the front of a water recreational device and the Stewart patent has two side-by-side palm grips. I think it's described in specs that the court, the district court said were functionally equivalent to side-by-side handles. So I don't think there's any dispute that all the claimant limitations of the 681 patent were found in the prior art. And there were limited, finite, as you mentioned, Judge Lori, a number of things that could be done to stabilize the board and to make it easy to use. Yeah, but if we assume this seems like a good idea and it seems like your company thought it was a good idea or at least expressed that to your friend on the other side at some point, isn't that sort of probative at least that some long-felt need that no one else had come up with, even assuming that the element, the prior art contained all of the individual elements. No one thought to combine that prior to Mr. Nash. Well, just because there's a long period of time that no one thought to combine this doesn't mean that it's not obvious. I mean, that's in the case law. But with respect to the comment that was made by my client, I think it was, they were starting a business relationship. And actually, the record shows that Zupp approached Nash about manufacturing a board for them. And I think there was a comment that was made in the beginning of a business relationship. It was not evidence of a long-felt need because there was no long-felt need that was unresolved in the industry. I mean, there's a lot of products out there and it's referenced in the specs of a lot of the prior art that's out there that talks about these various elements that the engineers and designers were motivated to use to stabilize the board, to stabilize positions on the board, to allow riders to do simultaneous positioning on the boards at various points in time during the ride. So I think that was all available in the prior art. Wasn't there considerable commercial success with this product? There's about $1.2 million or so in sales. I don't know where that stands relative to the sales. We don't either. I mean, that's the record. The record is that there's no evidence of what share of the market that is or what that represents. And the case law that this court has held is that there has to be some nexus between the gross revenues and the claimed invention. And there is no evidence of any connection or nexus between those gross revenues and the claimed features. That's now explained to me why, setting aside whether there was or wasn't a long-felt need, but it was observed by your client that there's a possible market for such a device, why not just make one of the devices in the prior art rather than adopt the changes, large or small, for the purpose of facilitating standing up? Right. Well, it's not an exact replica. I'm sorry, the Versa board, my client's board, is not an exact replica of the patent. It's not exact, but it certainly isn't an exact replica of what's in the prior art. So there were changes made that were told, and the record helps to support in the direction of what this person did. They say it took them four years of experimentation to decide just what innovations or changes would be useful. The changes my client made to the prior art was he made the different components of the board. You could remove them. You could remove the handles. You could change the positioning of the footings to where you could skate or you could ski. And so that was the changes my client made to the prior art. It was not contemplated by the 681 patent. So there were changes in my client made to the prior art that were not an exact replica of what the 681 patent discloses. No, but it does seem that a fair amount of their product is the same in your product. Well, the interchangeability of the parts is certainly a significant factor that's a difference between the VersaBoard product and the product disclosed in the 681 patent. That's a significant change. That's a change incidentally that when we did the survey of the customers that purchased the VersaBoard, they found that to be the most important feature while they purchased the board was the interchangeability of the different components of the board because these are pre-drilled holds on the board that allows for parts to be removed or moved in different places. So there is a significant difference between the VersaBoard and that was what was disclosed in the prior art. It was not just an assembly, but I think the 681 patent, however, takes components such as the Clark, teaches a bow, a board, a tow hook, and a handle similar to the handle that's on the Zup board. It was a single handle, but it was a handle. The Fleischmann teaches side-by-side handles. The Parton 000 patent teaches side-by-side footings, and there's abundant references in the prior art that would suggest that there was a motivation, there could be a motivation of the person of ordinary skill to combine these limited number of prior pieces to come up with the invention disclosed in the 681 patent. If I may, could I, unless there are further questions on obviousness, I'd like to turn to the contributory infringement. Now, was that an alternative holding by the district court judge? There was a finding that there was no non-infringement, and then you also found that. Which is not necessary, obviously, if she's correct on the invalidity finding. So with respect to the contributory infringement claim, this court has repeatedly held that a plaintiff must prove that the accused product had no substantial non-infringing uses. But in this case, the VersaBoard, the accused product, can be used for purposes other than infringement. As I mentioned, the summary judgment record shows the handles and the foot bindings in the Nash VersaBoard has a variety of substantial non-infringing uses. The foot bindings may be placed side-by-side to ski. They may be placed in different positions to water ski or wake surf. The handles may be attached to allow somebody to get onto the board, to knee board, and they may be removed. But you're saying that the pieces may be used differently, but this is an apparatus claim consisting of all of these pieces. How can that be used differently? Well, it's an apparatus claim and a method. And a method, right. It's just a method of writing the apparatus. How do you use that total apparatus differently? Well, I think that the plaintiff has to prove there's a substantial non-infringing use. In other words, that there's not some fanciful or arbitrary or some unreasonable use of the product. It has to be a substantial non-infringing use to warrant a finding of contributory infringement. Is that the plaintiff's burden or your defense? That is the plaintiff's burden to prove. Really? I mean, you may be right, but on contributory infringement, doesn't the defendant have to establish that there's a substantial non-infringing uses? I don't believe so, Your Honor. Why would the plaintiff want to establish that? They want to establish that there's infringement. It's only the infringer that... I'm sorry. I misspoke. They have to prove that there's a substantial... They have to prove that there is direct infringement and that they knew of the patent and that its actions would lead to infringement of the patent by a third party. Right. But it's up to the defendant to establish that there was substantial non-infringing uses. They don't have to prove the negative. Yes, Your Honor. Right. And so that's what we proved in this case. That would affect the method claim, but it wouldn't affect the product claim, would it? It would affect both claims because... How? If the product is crossing, I would appreciate that there's an issue of obviousness. But if the product claim survived, then why would contributory infringement be a factor? Because the pieces and parts of the VersaBoard can be used in a non-infringing manner. They can be configured... Of the product... I appreciate that the method of use claim, perhaps if you don't stand up, you're not infringing. But I'm not at all sure. I don't understand how that applies to the product, which is the same no matter what. Right. Well, like I said, the product can be used in a non-infringing manner if you simply have the side-by-side... But what's the infringing manner is the method claim, not the product claim. Let me restate that, if I may, the product is sold in a non-infringing manner when the side-by-side... When the foot bindings are positioned in a perpendicular manner to the board and the handles are placed... It doesn't look the same. You have a product, you have the toe hook, you have the foot bindings, you have the protruding rails. You're saying, what difference does it make how it's used if the product is the same? Well, with respect to the product, the product is sold in a configuration that is non-infringing. It's sold... It is not sold with side-by-side footings and handles in a perpendicular position. It's sold with handles and the bindings in a different position that it's a non-infringing position. In fact, the product on the face of it says, do not put the handles on the board with the foot bindings in a side-by-side position because of safety concerns. And it was infringed. That's correct as well. That's right. So I think the case that the ZUP relies upon is this RICO case. And in RICO, there was an infringing drive... There were infringing drives in a larger product with some separable features, but the defendant in that case claimed that there was substantial non-infringing use based solely on the additional features. In this case, the heart of the Nash's VersaBoard is the multifunctionality and movability of all the parts. It's not some product that is an infringing product that's wrapped into non-infringing features. It's the multifunctionality and movability of all the parts that makes the VersaBoard unique. And because there are substantial non-infringing uses of that VersaBoard, there is just no Nash contributorily infringed the 681 patent. And therefore, Nash requests that the court affirm the judgment of the district court. Unless there are further questions. Thank you. Thank you. Thank you, Your Honor. I'd like to devote the rest of my time to obviousness, but I do want to clear up something on the contributory point. So, ZUP is asserting Claim 9 in the method. This defendant designed around the apparatus claim and put on, and within the apparatus claim, Claim 1, there's a limitation regarding the rails, which the defendant designed around. So, the only claim asserted is the method, Claim 9. With respect to obviousness, I didn't address in my opening remarks, it's not that we're just relying on this defendant to prove long-felt need. We also put in expert testimony, Mr. Jim Emmons, and so I direct the court's attention, just for the record, that's at 414 of the appendix. So, here we do have the defendant's own conduct to establish long-felt need, but Mr. Emmons expertly declares that there was this long-felt need. Beyond that, we're also dealing with the presumption of validity, and so it's almost impossible if the plaintiff comes forward with evidence, any evidence, so let's say we only had two pieces of evidence. This defendant put in no evidence on secondary considerations, and so under the law of this court, in touch, for example, which is cited in the briefs, that in and of itself is reversible error. So, Nash retained an expert who opined on obviousness, yes, but put in no evidence, no testimony about secondary considerations, and so that's a basis of reversal right there. If the court has further questions, I'm happy to answer. Thank you. Thank you. Thank you. We thank both sides, and the case is submitted.